# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
MAY 13 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                          DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )    Case No.  '19MJ1968
Cellular Telephone, Huawei, Model: MYA-L13, S/N: )
HAVBB18304152122, IMEI: 865434032158896 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952, 960 | Importation of Controlled Substances; |
| 21 U.S.C. § 963 | Conspiracy to Import Controlled Substances |

The application is based on these facts:

SEE AFFIDAVIT

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's Signature*

HSI Special Agent Matthew Rhoa
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 5/13/19

City and state: San Diego, CA

Honorable Michael S. Berg, U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

>CELLULAR TELEPHONE
>Huawei
>Model: MYA-L13
>S/N: HAVBB18304152122
>IMEI: 865434032158896
>**(Target Device)**;



currently in the possession of the U.S. Department of Homeland Security, Homeland Security Investigations, which is located at 880 Front Street, San Diego, CA 92101 (Evidence Vault).

## **ATTACHMENT B**

ITEMS TO BE SEIZED

Authorization to search the **Target Device** described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the **Target Device** for evidence described below. The seizure and search of the **Target Device** shall follow the search methodology described in the affidavit submitted in support of the warrant. The evidence to be seized from the **Target Device** will be electronic records, communications, and data such as emails, text messages, chats and chat logs from third-party applications, photographs, audio files, videos, and location data, for the period of June 1, 2018 to October 17, 2018:

a. tending to indicate efforts to import methamphetamine, or some other federally controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substances from Mexico into the United States;

c. tending to identify coconspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substances from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substances from Mexico into the United States;

e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

  f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.

## AFFIDAVIT

I, Matthew Rhoa, being duly sworn, hereby state as follows:

## INTRODUCTION

1. This affidavit supports an application for a warrant to search the following electronic device, as further described in Attachment A, and seize evidence of crimes, specifically, violations of Title 21, United States Code, Sections 952, 960 and 963, as more particularly described in Attachment B:

CELLULAR TELEPHONE

Huawei

Model: MYA-L13

S/N: HAVBB18304152122

IMEI: 865434032158896

(hereinafter the "**Target Device**").

This search supports an investigation and prosecution of Leonor Jara-Bobadilla ("JARA") for the crimes mentioned above. A factual explanation supporting probable cause follows.

2. On December 28, 2018, I obtained a search warrant for the **Target Device**, to seize items identified on Attachment B for the date range of August 1, 2018 to October 17, 2018. *See* 19-MJ-0023 (S.D. Cal.). I provided the warrant to HSI's Computer Forensics Analysts on January 2, 2019, and an Analyst conducted the forensic download of the **Target Device** on or about January 23, 2019. And on April 9, 2019, I obtained a second warrant to seize items identified on Attachment B for the date range of July 1, 2018 to August 1, 2018. *See* 19-MJ-1444 (S.D. Cal.). Given updates to the forensic software program that I describe further below, I now seek authority to search the **Target Device** again; and, in light of evidence I have found in the prior two searches, I am seeking authority for an additional thirty-day period—in sum, I seek authority to search from June 1, 2018 through October 17, 2018.

3. The **Target Device** was seized on October 17, 2018 from JARA after she was arrested for driving a black 2000 Mazda MPV (the "Vehicle") into the United States

through the San Ysidro Port of Entry (the "SYPOE") with approximately 37.30 kilograms of methamphetamine, 24.04 kilograms of cocaine, and 5.84 kilograms of heroin hidden in the quarter panels and doors. The **Target Device** is currently in the possession of the U.S. Department of Homeland Security ("DHS"), Immigration and Customs Enforcement/Homeland Security Investigations ("HSI"), which is located at 880 Front St., San Diego, CA 92101 (Evidence Vault).

4. Based on the information below, there is probable cause to believe that a search of the **Target Device** will produce evidence of the aforementioned crimes, as described in Attachment B.

5. The information contained in this affidavit is based upon my experience and training and consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from my personal investigation of this matter and my review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all of the information known by me or other federal agents regarding this investigation. Instead, it contains only those facts necessary to establish probable cause.

## EXPERIENCE AND TRAINING

6. I am a Special Agent with HSI, which is a component agency of the DHS. I have been employed as an HSI Special Agent since November 2017. I am currently assigned to the HSI San Diego field office in San Diego, California. My job duties are to investigate the smuggling of controlled substances into the U.S. I have been cross-designated by the U.S. Drug Enforcement Administration ("DEA") to conduct narcotics investigations and enforce provisions of the Federal Controlled Substances Act, pursuant to Title 21 of the United States Code. Prior to employment with HSI, I was a federal law enforcement officer with the Federal Air Marshal Service (FAMS), also a component of DHS. I was assigned as a Federal Air Marshal from July 2010 to November 2017 at the Washington DC., Baltimore, MD, and Chicago, IL field offices. Prior to my federal law

enforcement career, I was a police officer in Michigan certified by the Michigan Commission on Law Enforcement Standards (MCOLES) from July 2000 to December 2008. I have received a Master's of Science in criminal justice administration and a Bachelor of Arts degree in criminal justice from the Ferris State University in Big Rapids, Michigan.

7. As an HSI Special Agent, my formal training consisted of six months of residential instruction at the Federal Law Enforcement Training Center in Brunswick, Georgia, which included training related to narcotics and dangerous drugs. I have participated in training programs related to controlled substances, including but not limited to marijuana, cocaine, methamphetamine, and heroin. I have also received training in the methods used by narcotics traffickers to import, distribute, package and conceal controlled substances. Moreover, I have participated in numerous investigations and executed arrests for drug-related offenses, including possession with the intent to distribute, transportation, and the importation of controlled substances.

8. Additionally, through the course of my duties as a Special Agent, I have talked with other experienced narcotics investigators and received informal training regarding illegal drug trends and methods of operation for multi-kilogram drug dealing and trafficking in the San Diego area.

9. Based on my training and experience, I am familiar with the ways in which drug smugglers and traffickers conduct their business. Indeed, during the course of my duties I have (1) worked as a case agent, directing specific drug-related investigations; (2) worked as a surveillance agent who observed and recorded movements of individuals suspected of trafficking drugs; (3) participated in the execution of search warrants related to drug investigations; (4) initiated and executed numerous arrests for drug-related offenses, including possession with the intent to distribute; and (5) interviewed criminal defendants, witnesses, and informants in furtherance of investigations into the illegal smuggling and trafficking of controlled substances. Through these duties, I have gained a

3

working knowledge and insight into the operational habits of drug smugglers and traffickers.

10. Based upon my training and experience and consultations with law enforcement officers experienced in drug smuggling and trafficking investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

   a. Drug smugglers and traffickers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages;

   b. Drug smugglers and traffickers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit;

   c. Drug smugglers and traffickers and their coconspirators will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations;

   d. Drug smugglers and traffickers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo;

   e. Drug smugglers and traffickers will use cellular/mobile telephones to notify or warn their coconspirators of law enforcement activity to include the presence and posture of marked and unmarked units as well as the operational status of checkpoints and border crossings; and

   f. Drug smugglers and traffickers and their coconspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

11. Based upon my training and experience and consultations with law enforcement officers experienced in drug smuggling and trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text

4

communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating drug smuggling and trafficking conspiracies that searches of cellular/mobile telephones sometimes yields evidence:

    a. tending to indicate efforts to import methamphetamine, or some other federally controlled substances from Mexico into the United States, or possess and/or transport with the intent to distribute methamphetamine or federally controlled substances within the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute methamphetamine or federally controlled substances within the United States;

    c. tending to identify coconspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute methamphetamine or federally controlled substances within the United States;

    d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute methamphetamine or federally controlled substances within the United States, such as stash houses, load houses, or delivery points;

5

  e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

  f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

12. Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for GSM cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Some of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

13. Based on my training and experience, and conversations with other law enforcement officers who investigate drug smuggling and trafficking, I know that drug conspiracies often require detailed and intricate planning to successfully evade detection. Consequently, drug conspiracies often involve planning and coordination for several months—this planning often occurs through mobile telephones. Additionally, based on my training and experience, and conversations with other law enforcement officers who investigate drug smuggling and trafficking, I know that coconspirators are often unaware when a fellow coconspirator has been arrested and will attempt to communicate with that coconspirator via mobile telephone after his or her arrest to determine the whereabouts of drugs that are being transported.

**FACTS SUPPORTING PROBABLE CAUSE**

14. According to a report prepared by CBPO David Schiano, on October 17, 2018, at approximately 0826 hours, Schiano was conducting pre-primary inspections at the SYPOE when he approached the Vehicle bearing plates BA/MM A65NTG9 that JARA was driving. CBPO Schiano used a K910B Buster Contraband Detector on the rear quarter panel on the driver side of the Vehicle and received a high reading. CBPO Schiano began a cursory inspection of the Vehicle and received high Buster readings when checking the

6

inside of the driver-side quarter panel, which CBPO Schiano opened with a screwdriver and observed packages wrapped in cellophane.

15. According to a report prepared by CBPO Nicholas Pernicano, a secondary inspection of the Vehicle's quarter panels, doors, and dashboard revealed about 74 packages weighing 37.30 kilograms, which field-tested positive for methamphetamine; 20 packages weighing 24.04 kilograms, which field-tested positive for cocaine; and 5 packages weighing 5.84 kilograms, which field-tested positive for heroin.

16. On October 17, 2018, at approximately 9:21 a.m., I was notified of the drug seizure and responded to the SYPOE, where JARA, the Vehicle, methamphetamine, cocaine, heroin, and the **Target Device** were being held for further processing. The **Target Device** was seized by CBPO Pernicano and was provided to me. At approximately 12:46 p.m., I made contact with JARA at the SYPOE. During her post-Miranda interview, JARA identified the **Target Device** as belonging to her.[1]

17. On October 17, 2018, I interviewed JARA, and she denied knowledge of the narcotics in the Vehicle. She said she had responded to an advertisement in a newspaper and had been contacted by a man named Alfredo GARCIA (GARCIA). JARA said that GARCIA arranged for the Vehicle to be registered in her name and that GARCIA would provide the Vehicle to her when she crossed into the United States. JARA said she would drive the Vehicle into the United States and purchase about $20 worth of cleaning supplies and then return to Mexico and deliver the Vehicle back to GARCIA. JARA said when she drove the Vehicle into the United States, she would park the Vehicle in a parking lot close to the international border and then call GARCIA to tell him where the vehicle was parked. JARA then said she would leave the vehicle and go shopping, initially stating only at the ".99 cent" store, but later stating that she would go grocery shopping or to church

---

[1] A logical extraction of the contents of the **Target Device** was performed using the Cellebrite machine at the port of entry. None of those contents are relied upon for purposes of establishing probable cause in this affidavit. Additionally, because this case is likely headed to trial, I would seek a warrant to search the **Target Device** regardless in order to obtain a full forensic examination.

7

and that she would be away from the Vehicle for several hours. JARA said she would then call GARCIA before returning to the Vehicle. JARA said she was paid $100 in cash for each trip.

18. My review of the TECs records and crossing history for JARA reveals that from August 31, 2018 to October 17, 2018 she crossed the United States/Mexico border approximately 13 times in the Vehicle.

19. As noted, JARA said in her interview that she had responded to an advertisement in a newspaper and been contacted by GARCIA. Subsequently, JARA has provided an electronic copy of the advertisement, which is dated August 13, 2018. The **Target Device** has a communication with the phone number listed on the advertisement on August 13, 2018.

20. During my search of the **Target Device** pursuant to the prior search warrant (19-MJ-023 (S.D. Cal.)), I found that on August 8, 2018, JARA missed a call from a phone number saved to the contact "Alfred G." After August 13, JARA tried to call this number at least one time, and had at least one conversation with the user of that number. I also note from my search that she had communications with contacts saved as "Alfredo," "Alfredo Gcia," "Alfredo G," and "Alfredito G." These appear to me to be variations on the name "Alfredo Garcia," and so I believe the **Target Device** demonstrates that before August 13, 2018, there was at least one attempted phone communication between GARCIA and JARA.

21. In light of the foregoing information, I obtained a second warrant to search the **Target Device** (19-MJ-1444 (S.D. Cal.)). In that search, I found that on July 31, 2018, JARA missed another call from a phone number saved to the contact "Alfred G." In other words, there had been at least two attempted phone communications between GARCIA and JARA before August 13, 2018.

22. When I conducted the search under the second warrant, an HSI Computer Forensic Analyst provided me with the data from the authorized 30-day period, parsed off from the forensic download done in January 2019.

8

23. I have recently been advised by the Analyst that since January 2019, there have been multiple software updates to the program used to extract data from the model of phone that is the **Target Device**, as well as added hardware support capability. I have been advised that these improvements make it more likely that a new forensic analysis can identify and extract more data from the phone, such as items that the user may have deleted. Given this information, I believe HSI can find additional relevant information in a fresh data extraction from the **Target Device** that may not have been available earlier because the state of the technology in January 2019 is not what it is now. Given this possibility and in light of the probable cause shown herein, I seek this new authority to search the **Target Device** again, with the benefit of a new forensic download based on the most recent software updates.

24. I seek this authority for the period of June 1 through October 17, 2018. As noted, when I searched the **Target Device** from the period of August 1 through October 17, I found a missed call from GARCIA dated August 8—before the advertisement that JARA had provided. I then obtained the second warrant, in which I found a second missed call. Given the cumulative information, I submit there is probable cause to add thirty days to the search—in other words, to search between June 1 and October 17, 2018.

25. Based upon my experience and investigation in this case, there is probable cause to believe that JARA, as well as other persons currently unknown, were involved in an ongoing conspiracy to import and transport methamphetamine and other federally controlled substances. Based on my experience investigating drug smugglers and traffickers, there is probable cause to believe that JARA used the **Target Device** to coordinate with coconspirators regarding the importation, transportation, and distribution of methamphetamine and other federally controlled substances, and to otherwise further this conspiracy both inside and outside of the United States. There is also probable cause to believe that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of the **Target Device**, which may identify

9

other persons involved in drug trafficking activities.

26. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in drug trafficking investigations, and all the facts and opinions set forth in this affidavit, there is probable cause to believe that information relevant to the drug smuggling and trafficking activities of Leonor JARA Bobadilla, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Device**. For the reasons set forth above, I request permission to search the **Target Device** for items listed in Attachment B for the time period from June 1, 2018 up to and including October 17, 2018.

## METHODOLOGY

20. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have

potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

21. Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

22. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

## CONCLUSION

22. Based on all of the facts and circumstances described above, there is probable cause to conclude that Leonor Jara-Bobadilla used the **Target Device** to facilitate violations of Title 21, United States Code, Sections 952, 960, and 963.

22. Because the **Target Device** was promptly seized during the investigation of Leonor Jara-Bobadilla's trafficking activities and has been securely stored, there is probable cause to believe that evidence of illegal activities committed by Leonor Jara-Bobadilla continues to exist on the **Target Device**. Based on the above facts and my training and experience, there is probable cause to believe that evidence of violations of Title 21, United States Code, Sections 952, 960, and 963 will be found within the date range from June 1, 2018 to October 17, 2018.

23. WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachment A and to seize the items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Matthew Rhoa
HSI Special Agent

Subscribed and sworn to before me this 13th day of May, 2019.

_____
The Honorable Michael S. Berg
United States Magistrate Judge